FENNEMORE CRAIG, P.C.
Travis A. Pacheco (No. 026337)
David L. Sieck (No. 038269)
2394 E. Camelback Rd.
Suite 600
Phoenix, Arizona  85016
Telephone:  (602) 916-5000
Email:  tpacheco@fennemorelaw.com
Email:  dsieck@fennemorelaw.com

*Attorneys for Plaintiff*
*Brian Timmons*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Timmons, an individual, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Valor Global, LLC, a Delaware limited liability company, | |
| Defendant. | |

Plaintiff Brian Timmons, by and through his undersigned counsel, brings this action against Defendant Valor Global, LLC.  Plaintiff alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Brian Timmons ("Timmons" or "Plaintiff") is an individual who at all times material hereto has been a resident of the state of Colorado.

2.      Timmons was an employee of Defendant Valor Global, LLC ("Valor" or "Defendant") from April 1, 2022 to August 4, 2023.

3.      Valor is a Delaware limited liability company, registered with the Arizona Corporation Commission as a foreign limited liability company.  Valor maintains its principal place of business at 13430 N. Black Canyon Highway, Suite 250, Phoenix, Arizona 85029.  At all times material to this Complaint, Valor conducted business within the State of Arizona.

4.      Valor is a business process outsourcing ("BPO") company operating domestic (U.S.) and off-shore facilities in Costa Rica and the Philippines for third-party telephonic customer service, web based chat, and over the phone technical support.

5.      Valor is an "employer" as defined by A.R.S. § 23-350(3).

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as Timmons and Valor are citizens of different states and the amount in controversy exceeds $75,000.00.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) as the acts giving rise to Plaintiff's claims occurred within the District of Arizona, Valor is subject to personal jurisdiction in the District of Arizona, and Valor's principal place of business is within this district.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

8.      Plaintiff re-alleges and incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

**A.      Background.**

9.      In or around March 2022, Valor began recruiting Timmons for employment at Valor and away from Timmons's then-current employer, to lead Valor's sales and marketing efforts.

10.     In or around March 2022, Timmons was in year two of a two-year employment contract which provided that if Timmons remained employed through January 3, 2023 with his then-current employer, Timmons would be entitled to a retention bonus and an equity allotment under the employment contract.

11.     On March 16, 2022, Valor by and through its Vice President of Talent and Development (Danielle Jones) and its President (John Craine) notified Timmons of a forthcoming offer of employment and provided Timmons with proposed terms of employment via email.

12.     Danielle Jones ("Jones") informed Timmons that Valor intended to hire him as its Chief Revenue Officer and Jones provided Timmons with the monetary and equity

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

30294187

components Valor intended to offer Timmons.

13.     Between March 20, 2022 and March 22, 2022, Timmons and John Craine ("Craine") corresponded via email and telephone regarding Valor's offer of employment to Timmons and negotiated the specific terms ultimately agreed to by the parties. Valor offered additional compensation items including, but not limited to, a signing bonus to Timmons to further incentivize him to join Valor.

14.     On March 25, 2022, Valor (via its President John Craine) offered Timmons the Chief Revenue Officer position with Valor by way of a written employment offer letter agreement (the "Employment Agreement").

15.     The Employment Agreement provided an anticipated start date of April 1, 2022 and detailed Timmons's compensation, incentive bonus compensation, equity grant, benefits, job duties, and other terms and conditions of his employment with Valor. A copy of the Employment Agreement is attached as *Exhibit 1*.

16.     The Employment Agreement provided Timmons a base salary of $315,000, a signing bonus of $125,000, and a "fast start" bonus of $200,000 (subject to specific terms and conditions outlined in the Employment Agreement).

17.     The Employment Agreement also provided Timmons a 4.35% commission rate for his 2022 sales with 50% of the commission to be paid upon the customer's contract execution and the remaining 50% to be paid upon full ramp.[1]

18.     The Employment Agreement further provided Timmons with a non-refundable draw of $25,000, payable in two installments of $12,500, with the first payment due on September 1, 2022 and the second payment due on September 1, 2023.

19.     On March 28, 2022, Timmons signed the Employment Agreement and returned the Employment Agreement to Valor.

20.     Timmons began his employment with Valor on or about April 1, 2022 and worked remotely for Valor from his home in Colorado, regularly participating in virtual

---

[1] "Full Ramp" is a BPO industry specific term, meaning all employees hired for a specific client (whether call center or technical support), have completed training, and have reached full productivity.

meetings and conferences with his co-workers and traveling on occasion to Valor's corporate office in Arizona as needed.

21.    Upon hire, Timmons implemented a sales strategy for acquiring new clients and business for Valor following conversations with Craine and Valor's Chief Executive Officer, Simerdeep Mayo ("Mayo").

**B.    ADT Costa Rica.**

22.    In September 2022, Timmons secured a new business services contract with ADT LLC at Valor's Costa Rica facility ("ADT Costa Rica"). The contract initially contained a nine (9) month term and created revenue of approximately $3,116,985 for Valor.

23.    Timmons and Valor (through Craine and Mayo) were involved in the negotiation of the ADT Costa Rica contract, which was ultimately signed by Valor on or about September 29, 2022.

24.    Under the terms of the Employment Agreement, Plaintiff was owed a 4.35% commission based on the revenue from the ADT Costa Rica services contract, totaling $135,588.85, to be paid as $67,794.43 upon contract execution and $67,794.43 upon full ramp.

25.    Following execution of the ADT Costa Rica contract, Valor unilaterally imposed restrictions and conditions upon Timmons's commission structure including decelerators based on the term (length) and profit margin of the contract and it refused to pay Timmons the commission he was entitled to under the Employment Agreement.

26.    On or around October 4, 2022 and October 7, 2022, Timmons contacted Craine via text message and via email regarding payment of the commission due to him.

27.    On or around October 28, 2022, Craine responded and informed Timmons that if he was able to secure an extension of the term of the ADT Costa Rica contract, Timmons would be paid for all commissions amounts owed under the Employment Agreement for the initial ADT Costa Rica services contract, plus any extension amounts.

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

- 4 -

30294187

28.     In November 2022, Valor paid Timmons only $32,353 in commissions as full payment for the ADT Costa Rica contract.

29.     Upon information and belief, Valor unilaterally reduced the commission payable to Timmons because it believed the profit margins were too low and because the contract was for a nine (9) month term, rather than a thirty-six (36) month term.

30.     Timmons objected to the reduced commissions payment.

31.     In or around December 2022, Timmons secured a three-month extension of the services contract with ADT Costa Rica for a total contract term of twelve (12) months. The contract extension also included an 11% price increase from $17.50 per hour to $19.50 per hour for the contracted services.

32.     The extension increased the expected revenue by approximately $1,242,106, with the total ADT Costa Rica contract revenue totaling approximately $4,359,091.

33.     Pursuant to the Employment Agreement and Craine's representations, Timmons is owed a 4.35% commission based on the total revenue of the ADT Costa Rica contract (approximately $4,359,091) and increased commissions of $54,031.61 for a total commission of $189,620.46 owed to Timmons for the ADT Costa Rica transaction.

34.     Pursuant to the Employment Agreement, the first 50% of the commissions was due to Timmons on or about September 29, 2022 (and payable to Timmons no later than thirty days after contract execution based on Valor's commission payment practices). The second 50% of the commissions was due upon full ramp in or around November 2022 (and payable to Timmons no later than thirty days thereafter based on Valor's commission payment practices).

35.     Valor failed to make timely payment of the commission amounts due to Timmons for ADT Costa Rica.

36.     Between December 2022 and his termination on August 4, 2023, Timmons corresponded with Craine and Mayo requesting the outstanding commissions owed for ADT Costa Rica via text message, video conference, and email.  Timmons provided Craine

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

30294187

1   and Mayo with supporting information detailing the amounts owed in accordance with the

2   Employment Agreement and the requested payment.

3       37.     Despite Timmons's repeated requests, Valor failed to timely pay the 4.35%

4   commission owed to Timmons on ADT Costa Rica.

5       38.     On August 4, 2023, Valor terminated Timmons's employment.

6       39.     Valor terminated Timmons's employment to avoid paying him the amounts

7   due to him and because he repeatedly requested payment of his unpaid wages and informed

8   Valor that its refusal to timely pay his wages violated his contract and the law (i.e., the

9   Arizona Wage Act, A.R.S. § 350 *et seq*).

10      40.     Upon Timmons's termination on August 4, 2023, Valor paid Timmons an

11  additional $1,544 for the ADT Costa Rica commissions.

12      41.     At that time, Valor refused to pay Timmons any additional commissions

13  alleged to be due to him.

14      42.     On August 9, 2023, Timmons (via his attorneys) submitted a demand letter

15  to Valor for all amounts owed to Timmons, including but not limited to the commissions

16  due under the ADT Costa Rica contract.

17      43.     In response to Timmons's demand for payment, Valor ultimately paid

18  Timmons an additional $98,906 for the ADT Costa Rica commissions on or about

19  September 27, 2023.

20      44.     Despite the payments made by Valor to date, Timmons is owed additional

21  commissions related to the ADT Costa Rica contract, totaling $56,817.46 which amounts

22  were not paid within seven (7) days of Timmons's termination in violation of A.R.S. § 23-

23  353(A).

24      45.     Valor has failed to pay any further amounts due to Timmons relating to ADT

25  Costa Rica.

26      46.     Upon information and belief, the following amounts are owed to Timmons

27  as commissions in accordance with the Employment Agreement for ADT Costa Rica:

28

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

- 6 -

| | | |
|---|---|---|
| Total Commissions Owed: | $ | 189,620.46 |
| Payments to Timmons: | | |
| 50% due upon contract execution: | $ | 94,810.23 |
| November 4, 2022: | < $ | 32,353.00> |
| August 4, 2023: | < $ | 1,544.00> |
| September 27, 2023: | < $ | 60,913.23[2]> |
| **Balance Due:** | **$** | **0.00** |
| 50% due upon full ramp: | $ | 94,810.23 |
| September 27, 2023: | < $ | 37,992.77[2]> |
| **Balance Due:** | **$** | **56,817.46** |

C. **ADT Philippines Voice**.

47.     In or around January 2023, Timmons secured a commitment for a new statement of work and business services contract with ADT LLC at Valor's Philippines facility for voice services ("ADT Philippines Voice").  Valor began providing services under the ADT Philippines contract in or around January 2023.  This service consists of Valor's employees actively engaging with ADT LLC's customers via telephone providing support and service.

48.     Pursuant to the Employment Agreement, Timmons was to be paid for all 2023 commissions based upon the 2023 commission plan agreed to by Timmons and Valor.

49.     The 2023 commission plan was agreed to by the parties in July of 2023.

50.     The commission structure of the 2023 commission plan was a 3%/2%/1% structure, providing Timmons with 3% of the monthly revenue in year one of the contract, 2% of the monthly revenue in year two of the contract, and 1% of the monthly revenue in year three of the contract (the "2023 Comp Plan").  Timmons was to be paid the monthly commission in the month following the month in which Valor's revenue was earned.

51.     The 2023 Comp Plan was retroactive to all sales made after January 1, 2023.

52.     Between January 2023 and July 2023, Valor earned revenues under the ADT Philippines  Voice  contract  of  approximately  $1,256,454,  entitling  Timmons  to

---

[2] The September 27, 2023, payment of $98,906 has been partially applied to the remaining balance owed for the ADT Costa Rica contract first 50% installment ($60,913.23) which was due upon execution and the remaining balance of the payment has been applied to the second 50% installment due upon full ramp ($37,992.77).

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

30294187

commissions under the 2023 Comp Plan, specifically a 3% monthly commission for 2023 totaling an amount of no less than $37,694, as shown below:

| Month: | Revenue: | Commission Amount (3%): | Commission Owed: |
|---|---|---|---|
| January 2023 | $88,040 | $2,641 | $ 2,641 |
| February 2023 | $97,042 | $2,911 | $ 2,911 |
| March 2023 | $178,105 | $5,343 | $ 5,343 |
| April 2023 | $166,992 | $5,010 | $ 5,010 |
| May 2023 | $199,734 | $5,992 | $ 5,992 |
| June 2023 | $263,271 | $7,898 | $ 7,898 |
| July 2023 | $263,271 | $7,898 | $ 7,898 |
| **Total Commission Owed:** | | | **$ 37,694.00** |
| Payment (August 4, 2023): | | | <$ 2,314.00> |
| **Balance Due:** | | | **$ 35,380.00** |

53.     Timmons had completed the tasks and work necessary to earn the commissions for ADT Philippines Voice.

54.     Valor has failed to pay Timmons the above-described balance of commissions due for ADT Philippines Voice and asserts that the commissions due to Timmons are only payable once Valor has received the invoiced amounts from the customer (ADT) pursuant to the 2023 Comp Plan.

55.     Due to Valor's internal billing issues, Valor failed to timely invoice ADT for the services it provided under the ADT Philippines Voice contract for the months of March 2023 through July 2023.

56.     Between June 2023 through his termination on August 4, 2023, Timmons corresponded with Craine and Mayo and requested payment for the outstanding commissions owed for the ADT Philippines Voice contract.

57.     Following Timmons's termination of employment on August 4, 2023, Valor paid Plaintiff $2,314 for the ADT Philippines Voice commissions.

58.     Despite the payments made by Valor to date, Timmons is owed additional commissions related to the ADT Philippines Voice contract, totaling an amount of no less $35,380 which were not paid within seven (7) days of Plaintiff's termination in violation of A.R.S. § 23-353(A).

**D.**     **ADT Philippines Chat.**

59.     In or around March 2023, Plaintiff secured a new business services contract with ADT LLC at Valor's Philippines facility for chat services ("ADT Philippines Chat"). This service consists of Valor's employees actively engaging with ADT LLC's customers via web-chat providing support and service.

60.     Between March 2023 and July 2023, Defendant earned revenues under the ADT Philippines Chat contract of approximately $449,123, entitling Timmons to commissions under the 2023 Comp Plan, specifically a 3% monthly commission for 2023 totaling an amount of no less than $13,474, as shown below:

| Month: | Revenue: | Commission Amount (3%): | Commission Owed: |
|---|---|---|---|
| March 2023 | $93,568 | $2,807 | $ 2,807 |
| April 2023 | $100,679 | $3,020 | $ 3,020 |
| May 2023 | $103,854 | $3,116 | $ 3,116 |
| June 2023 | $75,511 | $2,265 | $ 2,265 |
| July 2023 | $75,511 | $2,265 | $ 2,265 |
| **Total Commission Owed:** | | | **$ 13,474.00** |
| **Balance Due:** | | | **$ 13,474.00** |

61.     Timmons had completed the tasks and work necessary to earn the commissions for ADT Philippines Chat.

62.     Valor failed to pay Timmons the above-described balance of commissions due for ADT Philippines Chat and asserts that the commissions due to Timmons are only payable once Valor has received the invoiced amounts from the customer pursuant to the 2023 Comp Plan.

63.     Due to internal billing issues, Valor failed to timely invoice ADT for the services it provided under the ADT Philippines Chat contract for the months of March 2023 through July 2023.

64.     Between June 2023 and his termination on August 4, 2023, Timmons corresponded with Craine and Mayo and requested payment of the outstanding commissions owed for the ADT Philippines Chat contract.

65.     Timmons is owed commissions related to the ADT Philippines Chat contract, totaling an amount of no less than $13,474 which were not paid within seven (7) days of Plaintiff's termination in violation of A.R.S. § 23-353(A).

**E.     InformData.**

66.     In or around March 2023, Timmons secured a new business services contract with InformData, LLC ("InformData").

67.     Between March 2023 and July 2023, Valor earned revenues under the InformData contract of approximately $725,408, entitling Timmons to commissions under the 2023 Comp Plan, specifically a 3% monthly commission for 2023 totaling an amount of no less than $21,762, as shown below:

| Month: | Revenue: | Commission Amount (3%): | Commission Owed: |
|---|---|---|---|
| March 2023 | $42,102 | $1,263 | $ 1,263 |
| April 2023 | $167,893 | $5,037 | $ 5,037 |
| May 2023 | $188,975 | $5,669 | $ 5,669 |
| June 2023 | $172,913 | $5,187 | $ 5,187 |
| July 2023 | $153,524 | $4,606 | $ 4,606 |
| **Total Commission Owed:** | | | **$ 21,762.00** |
| Payment (August 4, 2023): | | | <$ 2,314.00> |
| **Balance Due:** | | | **$ 19,137.00** |

68.     Timmons had completed the tasks and work necessary to earn the commissions for InformData.

69.     Valor failed to pay Timmons the above-described commissions due for InformData and asserts that the commissions due to Timmons are only payable once Valor has received the invoiced amounts from the customer pursuant to the 2023 Comp Plan.

70.     Due to Valor's internal billing issues, Valor failed to timely invoice ADT for the services it provided under the InformData contract for the months of May 2023 through July 2023.

71.     Between June 2023 and his termination on August 4, 2023, Plaintiff corresponded with Craine and Mayo and requested payment for the outstanding commissions owed for the InformData contract.

72.     Upon Timmons's termination on August 4, 2023, Valor paid Timmons $2,625 for the InformData commissions.

73.     Despite the payments made by Valor to date, Timmons is owed additional commissions related to the InformData contract, totaling an amount of no less than $19,137 which were not paid within seven (7) days of Plaintiff's termination in violation of A.R.S. § 23-353(A).

**F.     Non-Refundable Draws.**

74.     Pursuant to the Employment Agreement, Valor owed Timmons a non-refundable draw of $25,000.00 to be paid via two installments of $12,500.00, with the first installment due on September 1, 2022 and the second installment due on September 1, 2023.

75.     Valor failed to pay Timmons the first installment of $12,500 on September 1, 2022, in violation of the Employment Agreement.

76.     Between October 2022 and his termination date on August 4, 2023, Timmons complained of Valor's non-payment of the September 1, 2022 draw installment which was a non-discretionary component of his compensation.

77.     Valor terminated Timmons's employment on August 4, 2023 and less than one month before the second installment payment of $12,500 was due to be paid to Timmons under his Employment Agreement.

78.     Upon Timmons's termination on August 4, 2023, Valor ultimately paid Timmons $12,500.00 for the installment that was due September 1, 2022.

**G.     Equity Grant.**

79.     Pursuant to the Employment Agreement, Valor was to issue Timmons "profit interest units of Valor Global, LLC in an amount equal to 1% of the equity pool available and assigned by the Board under the Management [Long Term Incentive Plan]." Exhibit 1, p.1, ¶ 8.

80.     At the time Timmons signed the Employment Agreement, Valor failed to provide the Management Long Term Incentive Plan ("LTIP") Agreement to Timmons and

failed to communicate to Timmons certain restrictions placed upon the equity grant including the requirement that Valor obtain a $300 million dollar valuation prior to its liquidation or change of control.

81.     In May 2022, Timmons received a copy of the Management LTIP Agreement and discovered the threshold value requirement upon which he was unaware.

82.     Timmons reasonably relied upon Valor's prior representations that he would be obtaining a 1% equity stake in Valor when he left his prior employer and began employment with Valor.

## FIRST CAUSE OF ACTION- BREACH OF CONTRACT

83.     Plaintiff re-alleges and incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

84.     Timmons and Valor are parties to the Employment Agreement, which is a valid and binding contract. *See* Exhibit 1.

85.     Timmons performed his duties and obligations under the Employment Agreement entitling him to the commissions owed under the Employment Agreement.

86.     Valor's failure to pay Timmons the commissions he is entitled to violates the terms of the Employment Agreement.

87.     Valor offered Timmons employment and agreed to honor the obligations set forth in the Employment Agreement including payment of the 2022 commissions at 4.35% and the 2023 commissions based on the 2023 Comp Plan.

88.     Valor breached the Employment Agreement by failing to pay Timmons the remaining 2022 commissions due for ADT Costa Rica in the amount of $56,817.46.

89.     Valor breached the Employment Agreement by failing to pay Timmons the remaining 2023 commissions for ADT Philippines Voice in the total amount of no less than $35,380.00 which became due in each month following the month in which the revenues were earned by Valor beginning no later than February 2023.

90.     Valor breached the Employment Agreement by failing to pay Timmons the 2023 commissions for ADT Philippines Chat in the total amount of no less than $13,474.00

which became due in each month following the month in which the revenues were earned by Valor beginning no later than April 2023.

91.    Valor breached the Employment Agreement by failing to pay Timmons the remaining 2023 commissions for InformData in the total amount of no less than $19,137.00 which became due in each month following the month in which the revenues were earned by Valor beginning no later than April 2023.

92.    Valor further breached the Employment Agreement by failing to pay Timmons the first installment of the non-refundable draw of $12,500 by September 1, 2022.

93.    As a direct and proximate consequence of Valor's breaches of the Employment Agreement, Timmons has sustained monetary damages, including but not limited to lost wages owed to him pursuant to the Employment Agreement totaling an amount of no less than $124,808.46.

94.    Timmons's claims are subject to Arizona law as the employment grievance arose in Arizona and Valor breached the terms of the Employment Agreement in Arizona.[3]

95.    Timmons is entitled to recover his reasonable attorneys' fees and costs incurred in bringing and maintaining this action pursuant to A.R.S. §§ 12-341 and 12-341.01.

## SECOND CAUSE OF ACTION- BREACH OF
## COVENANT OF GOOD FAITH AND FAIR DEALING

96.    Plaintiff re-alleges and incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

97.    Arizona law implies a covenant of good faith and fair dealing into every contract, including employment agreements.   This duty requires that neither party do anything that prevents the other from receiving the benefits of the agreement.

98.    Timmons entered into a contractual relationship with Valor by means of the

---

[3] Timmons's claims may also be subject to the laws of Colorado as Timmons principally resided in Colorado and worked remotely from Colorado for Valor. Jurisdiction and venue remain proper in Arizona for the reasons enumerated at page 2.

parties' Employment Agreement.  The Employment Agreement contains an implied covenant of good faith and fair dealing.

99.    The implied covenant precluded Valor from taking any actions to deprive Timmons of his reasonably expected benefits under the Employment Agreement, including but not limited to Valor's non-payment of the commissions and other compensation owed to Timmons.

100.    Timmons performed his duties and obligations under the Employment Agreement entitling him to the commissions owed.

101.    Valor, on the other hand, has taken intentional and bad-faith actions by, among other things, imposing restrictions upon customer contract length (term) and profitability that do not exist in the Employment Agreement to reduce the payable commission to Timmons, failing to timely invoice Valor's customers, withholding earned commissions owed to Timmons, and terminating his employment to avoid paying him forthcoming commissions and other compensation due to him.  Such bad faith conduct prevents Timmons from receiving his reasonably expected benefits under the Employment Agreement and constitutes a breach of the covenant of good faith and fair dealing.

102.    As a direct and proximate consequence of Valor's breaches of the covenant of good faith and fair dealing, Timmons has sustained monetary damages, including but not limited to lost wages owed to him pursuant to the Employment Agreement totaling an amount of no less than $124,808.46.

103.    Timmons is entitled to recover his reasonable attorneys' fees and costs incurred in bringing and maintaining this action pursuant to A.R.S. §§ 12-341 and 12-341.01.

### THIRD CAUSE OF ACTION- UNJUST ENRICHMENT

104.    Plaintiff re-alleges and incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

105.    Timmons alleges, in the alternative, that Valor has been unjustly enriched at the expense of Timmons.

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

30294187

106.   During his employment, Timmons's sales activities and valuable services resulted in revenue-generating business contracts for Valor.

107.   In exchange for such sales activities and services, Timmons expected that Valor would honor its obligations under the Employment Agreement, including that Valor would pay Timmons the commissions owed for his services.

108.   Valor has taken certain actions, described above, which prevent Timmons from receiving his reasonably expected benefits under the Employment Agreement.

109.   Valor would be unjustly enriched if it were allowed to retain the commissions and other compensation owed without having to perform its obligations under the Employment Agreement.

110.   Timmons has suffered an impoverishment as a consequence of Valor's enrichment at Timmons's expense.

111.   There is a direct connection between Valor's enrichment and Timmons's impoverishment.   There is an absence of justification for the enrichment and impoverishment.

112.   In the event the Court determines that the separate bases for Timmons's claims are inapplicable or not enforceable, Timmons has no adequate remedy at law against Valor, so equitable relief is necessary.

113.   As a direct and proximate result of Valor's conduct and unjust enrichment, Timmons is entitled to damages in an amount equal to the reasonable value of the enrichment that Valor received at Timmons's expense, in the principal amount of no less than $124,808.46, plus interest, costs and accruing attorneys' fees.

**FOURTH CAUSE OF ACTION- PROMISSORY ESTOPPEL**

114.   Plaintiff re-alleges and incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

115.   Valor promised Timmons the benefits, wages, commissions, non-discretionary compensation, and equity grant as stated in the Employment Agreement to lure and attract Timmons away from his former employer.

116.    Based on such promises, Timmons entered into an employment relationship with Valor.

117.    It was reasonably foreseeable to Valor that Timmons would rely upon the promised benefits, wages, commissions, non-discretionary compensation, and equity grant as stated in the Employment Agreement in leaving his former employer and in accepting employment with Valor.

118.    Timmons reasonably and justifiably relied upon Valor's promises and representations in leaving his former employer, accepting employment with Valor, and throughout the course of his employment with Valor.

119.    In the event the Court determines that the separate bases for Timmons's claims are inapplicable or not enforceable, Timmons has no adequate remedy at law against Valor, so equitable relief is necessary.

120.    As a direct and proximate consequence of Valor's promises, Timmons has sustained monetary damages, including but not limited to lost wages owed to him pursuant to the Employment Agreement totaling an amount of no less than $124,808.46, plus interest, costs and accruing attorneys' fees..

**FIFTH CAUSE OF ACTION- BREACH OF ARIZONA WAGE ACT**

121.    Plaintiff re-alleges and incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

122.    At all times relevant hereto, Timmons was an "employee" of Valor within the meaning of the Arizona Wage Act, A.R.S. § 23-350(2), as the Employment Agreement was made and/or performed within the state of Arizona.

123.    At all times relevant hereto, Valor was an "employer" within the meaning of the Arizona Wage Act, A.R.S. § 23-350(3).

124.    Timmons had a reasonable expectation of being paid the "wages" he earned pursuant to the Employment Agreement within the meaning of the Arizona Wage Act, A.R.S. § 23-350(7).

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

30294187

125.   Valor was aware of its obligation to timely pay wages pursuant to the Arizona Wage Act and pursuant to the Employment Agreement.

126.   Valor was aware of its obligation to pay all wages due to Timmons within seven (7) working days of his termination or by the end of the next regular pay period, which ever day comes sooner pursuant to A.R.S. § 23-353(A).

127.   Valor failed to timely pay Timmons his earned wages due and owing without a good faith basis for withholding the stated wages.

128.   Valor has willfully failed and refused to timely pay the wages due to Timmons in accord with the Arizona Wage Act (A.R.S. § 23-350 *et seq*.).

129.   As a result of Valor's unlawful acts, Timmons is entitled to the statutory remedies available to him pursuant to A.R.S. § 23-355(A), including treble damages.

## SIXTH CAUSE OF ACTION- ACCOUNTING

130.   Plaintiff re-alleges and incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

131.   Valor maintains the records of its revenues and the amounts received to the exclusion of all other persons and entities, including the amount of commissions due to Timmons.

132.   Valor held Timmons's commissions in trust for the benefit of Timmons until such time when the funds were to be disbursed.

133.   Timmons as a terminated employee of Valor no longer has access to the records or systems which provide the monthly revenues for which Timmons's commissions were based upon.

134.   Some of the amounts alleged to be due and owing to Timmons are approximated based upon information and belief as Timmons is unable to calculate the commissions owed based upon revenues in the months immediately preceding and at Plaintiff's termination.

135.   An accounting is necessary to determine the amount owed to Timmons and Timmons's damages with respect to the causes of action set forth in this complaint.

FENNEMORE CRAIG, P.C.
ATTORNEYS AT LAW
PHOENIX

30294187

136.   Timmons is entitled to an accounting of Valor's revenues related to ADT Costa Rica, ADT Philippines Voice, ADT Philippines Chat, and InformData, and of the commissions owed to Timmons as a result of Valor's non-payment and improper withholding of wages due to Timmons.

137.   Timmons is entitled to an award of any and all amounts the foregoing accountings determine Timmons is entitled to receive.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

A.   For damages in an amount to be proven at trial, totaling an amount of no less than $124,808.46;

B.   Treble damages on the award of unpaid wages pursuant to A.R.S. § 23-355(A);

C.   For Plaintiff's attorneys' fees and costs incurred in this matter pursuant to A.R.S. §§ 12-341 and 12-341.01;

D.   For pre-judgment and post-judgment interest at the highest rate allowed by law; and

E.   For such other and further relief as the Court deems just and proper.

DATED this 26th day of October, 2023.

FENNEMORE CRAIG, P.C.


By:   */s/ Travis A. Pacheco*
Travis A. Pacheco (No. 026337)
David L. Sieck (No. 038269)

*Attorneys for Plaintiff Brian Timmons*