# EXHIBIT 1



March 25, 2022

Brian Timmons
Brian.Timmons55@hotmail.com

Re:     *Offer of Employment*

Dear Brian:

Valor Global, LLC (the "Company") is very pleased to offer you a full-time position with the Company as Chief Revenue Officer, in accordance with the following terms and conditions:

1.      In your role you will be reporting to the Company's President ("President"). Your duties and responsibilities will include typical duties of a Chief Revenue Officer and such other duties as shall be assigned to you from time to time by the President.  Your job description is set out in more detail in Ex. A.

2.      We anticipate that April 1, 2022 ("Start Date") (assuming that you accept the terms of this Offer Letter) shall be the date you start employment with the Company.

3.      This Offer Letter is not intended to be, and does not constitute, an employment agreement of any type. Your employment with the Company will be "at-will."  This means that your employment is not guaranteed for any specific period of time and can be terminated at any time by you or the Company with or without cause. Nothing in this letter or the terms of your compensation should be construed as an implied guarantee of continued employment. This provision for employment at-will supersedes all other agreements and understandings concerning termination or other changes in the terms of your employment, whether oral, written, expressed or implied. This provision can be changed only in a formal written contract signed by you and the President of the Company.

4.      You agree while you are employed by the Company and for a period of  two (2) years following any termination of your employment, you will not, either directly or indirectly, (i) solicit, induce, recruit or encourage any employee or independent contractor of the Company to leave their employment or contracting relationship with the Company or to accept employment with any person or entity other than the Company or (ii) solicit any client or business partner of the Company (a) to terminate its relationship with the Company or (b) to become a client or business partner of any person or entity other than the Company for matters competitive with or related to the Company's business.

5.      You will receive a base salary at the rate of $315,000 ("Base Salary") per year, less required payroll taxes and withholdings.  You will be classified as an "exempt" employee.  Exempt employees are those who are not covered by either federal or state wage and hour laws because of their duties and compensation. As such, you are not eligible to receive payment for overtime.  Your salary will be paid on the 15th and last day of the month. If a payday falls on a Saturday, Sunday, or holiday then employees are paid the preceding business day bi-weekly basis in accordance with the Company's payroll practices.

6.      You are eligible for incentive bonus compensation opportunities as set forth in Ex. B.

7.       The company will reimburse you for reasonable and necessary pre-approved travel, accommodation and other related expenses. All reimbursements should be submitted using Company approved documentation.

8.      You will be entitled to receive profit interest units of Valor Global, LLC in an amount equal to 1% of the equity pool available and assigned by the Board under the Management LTIP.



13430 N Black Canyon Hwy #250, Phoenix, AZ 85029

valorglobal.com

9.      You will be eligible for the Company's standard health and other insurance benefits in accordance with the Company's policies, as they may be amended from time to time. You will also be eligible for 401(k) participation beginning immediately upon your Start Date. The Company maintains a "non-vacation vacation policy", which you will be eligible for immediately. The vacation policy dictates that PTO hours do not accumulate, and therefore are not paid out if employment is terminated. You have unrestricted time during the year to accommodate vacations, sick time, or other needed time off in accordance with supervisor approval. Please coordinate your time off with supervisor with as much notice as possible so as not to interrupt the team flow. In your first (1) year of employment, you are eligible for 40 hours of sick time.

10.     This is a full-time position, and you will be expected to devote substantially all of your working time and ability to the performance of your duties. You will also be expected to give the Company your undivided loyalty, and to refrain from any other employment or outside activity that might interfere with your duties to the Company or create a potential or actual conflict of interest.

11.     You also agree to comply with the Company's rules, policies and procedures as they are issued from time to time by the Company. In the event of a conflict between the terms of this Offer Letter and any rules and policies that may be adopted by the Company, the terms of this Offer Letter apply.

12.     As a condition of employment, you must agree to sign and abide by the Company's Employee Proprietary Information and Inventions Agreement, a copy of which is attached as Exhibit C to this Offer Letter ("EPIIA"). Upon acceptance of this offer of employment, the EPIIA must be signed and returned to me.

13.     This offer of employment is confidential.  In the event you disclose the details of this offer to others, the Company has the right to rescind the offer and terminate this Offer Letter.  This offer of employment is also conditioned upon (i) the accuracy of the information contained in your resume and the information provided by you during your interview(s) concerning your education, prior employment history, abilities and qualifications, (ii) the successful outcome of a background check, and (iii) verification of your eligibility to work in the United States, for which process you will be asked to complete a Form I-9 and to provide the identification documents required by the form.  You must also maintain your eligibility to work in the United States throughout your employment with the Company.

14.     This Offer Letter and the EPIIA sets forth the entire agreement between you and the Company with respect to the subject matter thereof.  This Offer Letter and the EPIIA supersede any other agreements or promises made to you by anyone, whether oral or written, and they can only be modified by a written agreement signed by the PRESIDENT of the Company.  The validity or unenforceability of any provision of this Offer Letter or the EPIIA, or any terms hereof or thereof, shall not affect the validity or enforceability of any other provision or term of this Offer Letter or the EPIIA.

15.     Your signature below constitutes your agreement with the Company's employment terms and conditions, including the provisions of the EPIIA.

To confirm that you agree to the terms and conditions stated in this Offer Letter, please sign and date the enclosed copy of this Offer Letter and return it to me as soon as possible, but no later than 5:00 p.m. Mountain Time, on March 30, 2022. Also, please confirm your start date by indicating it in the appropriate line below.

On behalf of the Company, I am very pleased to make this offer and look forward to you joining our team.

Very truly yours,

Valor Global, LLC

*John H. Craine*

John H. Craine
President

I agree to the terms stated in this letter.

Dated: __March 28, 2022__

Brian Timmons

Start Date: __April 1, 2022__



### EXHIBIT A

### JOB DESCRIPTION & DUTIES OF CHIEF REVENUE OFFICER

- Develop, Implement, and manage all aspects of commercial sales operations.
- Build and maintain the company's Customer Relationship Management solution that includes realtime sales revenue funnel, stage progression, and sales activity.
- Build a high performing sales team to execute end to end sales including prospecting, proposing solutions, pricing, contract negotiation, closingdeals and implementation support as required.
- Develop business development compensation plans to exceed new logo growth objectives in alignment with Valor Global financial objectives.
- Maintain sales funnel pipeline 2.5x annual business development objectives.
- Establish realistic and achievable new logo sales goals and implement strategies in alignment with Valor Global growth objectives.
- Analyze activity and develop sales plans to market products, target channels, selected industry verticals and operational capacity.
- Collaborate with key stakeholders and sales support function including deal review process,proposal database, centralized sales collateral, client reference database, competitor intelligence, RFP responses and proposal writing.
- Collaborate with Finance on developing unique pricing strategies and creation of pricing models with key internal stakeholder input.
- Partner with legal team on new logo contracting and maintaining MSA and SOW template.
- Coordinate with Marketing to support the Valor social sales campaigns, development of the Valor product suite, drive brand awareness and sales events
- Generating and qualifying new growth opportunities using different approaches to penetrate prospective accounts.
- Ensure timely recognition and reward for top achievers and implement performance management actions when needed
- Building strong and collaborative relationships with other internal stakeholders and maintain the Valor Way Culture
- Monitoring market trends and providing regular competitor analysis.
- Integrate other sales functions into the Valor Global Sales team, as necessary.
- Support other duties as assigned.



**EXHIBIT B**

**INCENTIVE BONUS COMPENSATION**

In addition to your base salary of $315,000, you will have a commission target of $385,000 for annual OTE (On Target Earnings) of $700,000.

You are also eligible for the following:

- $125,000 signing bonus.
- $200,000 Fast start bonus payable upon signing of 3 new logo contracts of at least 75 FTE each or 300 total FTE by 8/31/22.
- Q3 and Q4 2022: Quota of $6,625,000 per quarter with a commission rate of 4.35% (75% of Annual OTE) paid 50% upfront upon contract execution and 50% upon full ramp.*
- $25,000 non-refundable draw for 3nd qtr. 2022 payable in two payments. First payment of $12,500 on 9/1/22 and second payment of $12,500 on 9/1/23.*
- 2023 Quota – TBD with an annual commission target of $385,000

*Need to be employee in good standing with Valor Global at time of disbursement

## EXHIBIT C

**EMPLOYEE PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT**

**Valor Global, LLC**

**EMPLOYEE PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT**

In consideration of my employment or continued employment by Valor Global, LLC, a Delaware limited liability company ("**Company**"), and the compensation paid to me now and during my employment with the Company, I hereby agree as follows:

1.      **Protection of Confidential Information**.

1.1      **Recognition of Company's Rights; Nondisclosure**. At all times during and after my employment, I will hold in strictest confidence and will not disclose, use, lecture upon, or publish any Confidential Information (as defined below) of the Company and/or its parent or any of its subsidiaries, except as may be required in connection with my work for the Company, or as expressly authorized in writing by the Chief Executive Officer CEO of the Company ("CEO"). I will obtain the CEO's written approval before publishing or submitting for publication any material (written, verbal, or otherwise) that relates to my work at the Company and/or incorporates any Confidential Information. I hereby irrevocably assign to the Company any rights I may have or acquire in any and all Confidential Information and recognize that all Confidential Information shall be the sole and exclusive property of the Company and its assigns. I have been informed and acknowledge that the unauthorized taking of the Company's trade secrets (a) could result in a civil liability under the Arizona Uniform Trade Secrets Act; and (b) is a crime under A.R.S. §13-1820.  I acknowledge that I have been informed that I have rights under 18 U.S.C. Section 1833(b) which states in part: "An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that – (A) is made  (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal."  Nothing in this Agreement is intended by Company to conflict with or create liability for actions taken that are permitted under 18 U.S.C. Section 1833(b).

1.2      **Confidential Information**. The term "Confidential Information" shall mean any and all confidential and/or proprietary knowledge, data or information related to the business of the Company and/or its parent or any of its subsidiaries or the actual or demonstrably anticipated research or development, including without limitation (a) trade secrets, inventions, mask works, ideas, processes, computer source and object codes, data, formulae, programs, other works of authorship, know-how, improvements, discoveries, developments, designs, and techniques; (b) information regarding products, services, plans for research and development, licenses, marketing and business plans, budgets, financial statements, contracts, prices, suppliers, and customers; (c) information regarding the skills and compensation of employees, contractors, and any other service providers of the Company and/or its parent or any of its subsidiaries; and (d) the existence of any business discussions, negotiations, or agreements between any third party and the Company and/or its parent and/or any subsidiaries of the Company.

1.3      **Third Party Information**. I understand that the Company has received and, in the future, will receive from third parties confidential or proprietary information ("**Third Party Information**") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. During and after the term of my employment, I will hold Third Party Information in the strictest confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use, Third Party Information, except in connection with my work for the Company or unless expressly authorized by an officer of the Company in writing.

1.4      **No Improper Use of Information of Prior Employers and Others.** I represent that my employment by the Company does not and will not breach any agreement with any former employer, including any noncompete agreement or any agreement to keep in confidence or refrain from using information acquired by me prior to my employment by the Company. I further represent that I have not

entered into, and will not enter into, any agreement, either written or oral, in conflict with my obligations under this Agreement. During my employment by the Company, I will not improperly make use of, or disclose, any confidential information or trade secrets, if any, of any former employer or any other third party to whom I have an obligation of confidentiality, and I will not bring onto the premises of the Company or use any unpublished documents or any property belonging to any former employer or any other third party, in violation of any lawful agreements with that former employer or third party. I will use in the performance of my duties only information which is generally known and used by persons with training and experience comparable to my own, which is common knowledge in the industry or otherwise legally in the public domain, or which is otherwise provided or developed by the Company.

**2.      Inventions**.

**2.1      Inventions and Intellectual Property Rights**. As used in this Agreement, the term "**Invention**" means any ideas, concepts, information, materials, processes, data, programs, know-how, improvements, discoveries, developments, designs, artwork, formulae, other copyrightable works, and techniques and all Intellectual Property Rights in any of the items listed above. The term "**Intellectual Property Rights**" means all patents, trade secrets, copyrights, trademarks, mask work, moral rights, and other intellectual property rights recognized by the laws of any jurisdiction or country throughout the world.

**2.2      Obligation to Keep Company Informed**. During the period of my employment and for one (1) year after my employment with the Company ends, I will promptly and fully disclose to the Company in writing (a) all Inventions authored, conceived, or reduced to practice by me, either alone or with jointly others, including any that might be covered under Section 2870, and (b) all patent applications filed by me or in which I am named as an inventor or co-inventor. At the time of each such disclosure, I will advise the Company in writing of any Inventions that I believe fully qualify for protection under Section 2870; and I will at that time provide to the Company in writing all evidence necessary to substantiate that belief. The Company will keep in confidence and will not use for any purpose or disclose to third parties without my consent any confidential information disclosed in writing to the Company pursuant to this Agreement relating to Inventions that qualify fully for protection under the provisions of Section 2870. I will preserve the confidentiality of any Invention that does not fully qualify for protection under Section 2870.

**2.5      Government or Third Party**. I agree that, as directed in writing by the Company, I will assign to a third party, including without limitation the United States Government, all my right, title, and interest in and to any particular Company Invention.

**2.6      Enforcement of Intellectual Property Rights and Assistance**. During and after the period of my employment, I will assist the Company in every proper way to obtain and enforce United States and foreign Intellectual Property Rights relating to Company Inventions in all countries. To that end I will execute, verify and deliver such documents and perform such other acts (including appearances as a witness) as the Company may reasonably request for use in applying for, obtaining, perfecting, evidencing, sustaining and enforcing such Intellectual Property Rights and the assignment thereof. In addition, I will execute, verify and deliver assignments of such Intellectual Property Rights to the Company or its designee. If the Company is unable to secure my signature on any document needed in connection with such purposes, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, which appointment is coupled with an interest, to act on my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further such purposes with the same legal force and effect as if executed by me. I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have for infringement of any Intellectual Property Rights assigned hereunder to the Company.

**2.7      Incorporation of Software Code**. Unless I have received the express written consent of the CEO or Chief Technology Officer, I agree that I will not incorporate into any the Company software or otherwise deliver to the Company any software code licensed under the GNU General Public License or Lesser General Public License or any other license that, by its terms, requires or conditions the use or distribution of such code on the disclosure, licensing, or distribution of any source code owned or licensed by Company.

**2.8     Works for Hire**. I acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment, and which are protectable by copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101).

**3.     Records**. I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that is required by the Company) of all Inventions made by me during the period of my employment by the Company, which records shall be available to, and remain the sole property of, the Company at all times.

**4.     Additional Activities**. I agree that (a) during the term of my employment by the Company (whether or not during business hours), I will not, without the Company's express written consent, engage in any employment or business activity that is in any way competitive with, or would otherwise conflict with my employment by, the Company, or assist any other person or organization in competing or in preparing to compete with the Company, (b) for the period of my employment by the Company and for two (2) years thereafter, I will not, either directly or indirectly, solicit or attempt to solicit any employee, independent contractor, or consultant of the Company to terminate his, her or its relationship with the Company in order to become an employee, consultant, or independent contractor to or for any other person or entity, and (c) during the term of my employment and for the two (2) years thereafter, I will not make public statements or communications that disparage the Company, its business, services, products or its affiliates or its or their current, former or future directors or executive officers (in their capacity as such), or with respect to any current or former director or executive officer or shareholder of the Company or its affiliates (in their capacity as such).

**5.     Return of Company Property and Expectation of Privacy**. Upon termination of my employment or upon the Company's request at any other time, I will deliver to the Company all of the Company's property, equipment, and documents, together with all copies thereof, and any other material containing or disclosing any Inventions, Third Party Information or Confidential Information and certify in writing that I have fully complied with the foregoing obligation. I agree that I will not copy, delete, or alter any information contained upon my Company computer or Company equipment before I return it to the Company. In addition, if I have used any personal computer, server, or e-mail system to receive, store, review, prepare or transmit any Company information, including but not limited to, Confidential Information, I agree to provide the Company with a computer-useable copy of all such Confidential Information and then permanently delete and expunge such Confidential Information from those systems; and I agree to provide the Company access to my system as reasonably requested to verify that the necessary copying and/or deletion is completed. I further recognize and agree that I have no expectation of privacy with respect to any property situated on the Company's premises and owned by the Company (including without limitation, stored computer files, e-mail messages, voicemail messages and other storage media, filing cabinets or other work areas) and that my activities and any files or messages may be monitored and/or subject to inspection by the Company's personnel at any time with or without notice. Prior to the termination of my employment or promptly after termination of my employment, I will cooperate with the Company in attending an exit interview and certify in writing that I have complied with the requirements of this section, which will include at a minimum the certifications set forth in **Exhibit C-1**.

**6.     Notification of New Employer**. If I leave the employ of the Company, I consent to the notification of my new employer of my rights and obligations under this Agreement, by the Company providing a copy of this Agreement or otherwise.

**7.     Governing Law**.

**7.1     State of Law and Venue.** This Agreement and any action related thereto will be governed and interpreted by and under the laws of the State of Arizona, without giving effect to any conflicts of laws principles that require the application of the law of a different state. I expressly consent to personal jurisdiction and venue in Maricopa County, Arizona, or the state and federal courts for Maricopa County, for any lawsuit filed there against me by the Company arising from or related to this Agreement.

**7.2     Legal and Equitable Remedies.** Because the employee's services are personal and unique and because the employee may have access to and become acquainted with the Confidential Information of the Company, both parties to this Agreement agree that any party may petition a court for injunctive relief including, but not limited to, where either party alleges or claims a violation of this Agreement or any other agreement regarding trade secrets, confidential information, non solicitation or Section 2870. Both parties to this Agreement understand that any breach or threatened breach of such an agreement will cause irreparable injury and that money damages will not provide an adequate remedy therefor and both parties hereby consent to the issuance of an injunction. In the event either party seeks injunctive relief, the prevailing party shall be entitled to recover reasonable costs and attorneys' fees.

**7.3     Voluntary Nature of Agreement.** I acknowledge and agree that I am executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else. I further acknowledge and agree that I have carefully read this Agreement and that I have asked any questions needed for me to understand the terms, consequences and binding effect of this Agreement and fully understand it.

**8.      General Provisions**.

**8.1     Severability**. If one or more provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. If any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

**8.2     Survival, Successors and Assigns**. This Agreement shall survive the termination of my employment and the assignment of this Agreement by Company to any successor or other assignee and be binding upon my heirs and legal representatives. Notwithstanding anything to the contrary herein, the Company may assign this Agreement and its rights and obligations under this Agreement to any successor entity or other assignee.

**8.3     Employment**. I agree and understand that my employment with the Company is at-will and nothing in this Agreement shall give me any right to continued employment by the Company, and it will not interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause and with or without advance notice.

**8.4     Notices**. Each party must deliver all notices or other communications required or permitted under this Agreement in writing to the other party at the address listed on the signature page, by courier, by certified or registered mail (postage prepaid and return receipt requested), or by a nationally recognized express mail service. Notice will be effective upon receipt or refusal of delivery. If delivered by certified or registered mail, notice will be considered to have been given three (3) days after it was mailed, as evidenced by the postmark. If delivered by courier or express mail service, notice will be considered to have been given on the delivery date reflected by the courier or express mail service receipt. Each party may change its address for receipt of notice by giving notice of the change to the other party.

**8.5     Waiver**. Any waiver or failure to enforce any provision of this Agreement on one occasion will not be deemed a waiver of that provision or any other provision on any other occasion. No waiver of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

**8.6     Export**. I agree not to export, directly or indirectly, any U.S. technical data acquired from the Company or any products utilizing such data, to countries outside the United States, because such export could be in violation of the United States export laws or regulations.

**8.7**     **Entire Agreement**. The obligations pursuant to sections of this Agreement titled "Confidential Information Protections" and "Inventions" shall apply to any time during which I was previously employed, or am in the future employed by the Company, or rendering services to the Company as an independent contractor or consultant if no other agreement governs non-disclosure and assignment of inventions during such period. This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous communications (either written or oral) between us with respect to such matters. No modification of or amendment to this Agreement, or any waiver of any rights under this Agreement, will be effective unless in writing and signed by me and the CEO of the Company. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

**8.8**     **Advice of Counsel**. I acknowledge that, in executing this Agreement, I have had the opportunity to seek the advice of independent legal counsel, and I have read and understood all of the terms and provisions of this Agreement. This Agreement shall not be construed against any party by reason of the drafting or preparation hereof.

**8.9**     **Counterparts**. This Agreement may be signed in two counterparts, each shall be deemed an original and both of which shall together constitute one agreement.

*[Signature Page Follows]*



This Agreement shall be effective as of the first day of my employment with the Company.

**EMPLOYEE:**                                      **COMPANY:**

**I HAVE READ, UNDERSTAND, AND ACCEPT**            **ACCEPTED AND AGREED:**
**THIS AGREEMENT. NO PROMISES OR**
**REPRESENTATIONS HAVE BEEN MADE TO**              **[Name of Company]**
**ME TO INDUCE ME TO SIGN THIS**
**AGREEMENT. I SIGN THIS AGREEMENT**
**VOLUNTARILY AND FREELY.**

*John H. Craine*

_____          John H. Craine

Brian Timmons                                      President

Date: March 28, 2022                               Date: March 26, 2022

Address: 2780 Pemberly Ave                         Address:
         Highlands Ranch CO 80126
                                                   13430 N. Black Canyon Hwy,

_____          Phoenix, AZ 85029
                                                   _____



**Exhibit C-1**

**CERTIFICATIONS**

**[Fill Out ONLY Upon Termination]**

I certify that I have delivered to Valor Global, LLC, a Delaware limited liability company ("**Company**"), and accordingly do not have in my possession, any of the Company's property, equipment, and documents, together with all copies thereof, and any other material containing or disclosing any Inventions, Third Party Information or Confidential Information (each as defined in the Employee Proprietary Information and Inventions Agreement signed by me with the Company, defined herein as the "**Agreement**").

I have not copied, deleted, or altered any information contained upon my Company computer or Company equipment before I returned it to the Company.

If I have used any personal computer, server, or e-mail system to receive, store, review, prepare or transmit any Company information, including but not limited to, Confidential Information, I have provided the Company with a computer-useable copy of all such Confidential Information and then I permanently deleted and expunged such Confidential Information from those systems. I agree to provide the Company access to my system as reasonably requested to verify that the necessary copying and/or deletion is completed.

I further certify that I have complied with and will continue to comply with all the terms of the Agreement, including the reporting of any Inventions and conceived or made by me and patent applications filed by me or in which I am named as an inventor or co-inventor covered by such agreement. I will hold Third Party Information, Confidential Information and any Invention that does not fully qualify for protection under Section 2870 in the strictest confidence and will not disclose to anyone (other than expressly authorized in writing by the CEO of the Company) such information.

_____

_____
<u>Date</u>

